Gerlinda MARTIN and Earl E. Martin *v.* James ARTHUR, M.D., Allan C. Gocio, M.D., Hot Springs Neurosurgery Clinic, P.A., and Calictek, Inc.

CA 98-1165 986 S.W.2d 143

Court of Appeals of Arkansas
Division III
Opinion delivered March 10, 1999

*Hicks Law Firm*, by: *George R. Wise, Jr.*, for appellants.

*Friday, Eldredge & Clark*, by: *William M. Griffen III* and *Jason B. Hendren*, for appellees James Arthur, M.D., Allan C. Gocio, M.D., and Hot Springs Neurosurgery Clinic, P.A.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Lyn P. Pruitt* and *Mark N. Halbert*, for appellee Calcitek, Inc.

JOHN F. STROUD, JR., Judge. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998), our state supreme court reviewed twelve medical malpractice cases regarding implantation of the product Orthoblock in cervical spine surgeries. Orthoblock is the trade name for a hydroxylapatite manufactured by Calcitek, Inc. The twelve cases arose from the trial court's granting summary judgment and its ruling that the claims were barred by the two-year limitations period of the Arkansas Medical Malpractice Act. We recently followed the dictates of the *Adams* court in *Johnson v. Arthur*, 65 Ark. App. 220, 986 S.W.2d 874 (1999). Appellants alleged in *Johnson*, as do appellants in the present case, that Orthoblock was improperly used in cervical spine surgeries.

Gerlinda Martin, an appellant in the present case, underwent a cervical spine fusion in December 1991 involving the implantation of Orthoblock. She and her husband, Earl Martin, filed their malpractice complaint in September 1996. The Martins raise two points on appeal of the trial court's grant of summary judgment against them. Their first point, that fraud and fraudulent concealment tolled the statute of limitations, is identical to the issue decided by the *Adams* court and is necessarily controlled by that decision. The second point, however, that the statute of limitations had not expired as to Calcitek, Inc., was not an issue in *Adams*. We affirm on both points.

### 1. Whether fraud and fraudulent concealment tolled the statute of limitations

This point is governed by the conclusion set forth by the *Adams* court regarding appellee doctors:

> [W]e do not equate a claim based on lack of informed consent with fraudulent concealment. We are concerned only with the timeliness of these causes of action, not their merits. There must be something more than nondisclosure, or a continuation of that nondisclosure, to toll the limitations period. However, at this stage of the proceedings, we are only asked to determine whether there exist genuine issues of material fact as to fraudulent concealment, keeping in mind that fraudulent concealment is better-suited as a question of fact for the jury, unless the evidence leaves no room for a reasonable difference of opinion.

> We reject appellants' contention that the failure of the doctors to inform them of the experimental nature of the Ortho-block constitutes fraudulent concealment. While the bulk of the evidence in these cases obviously raises a factual issue as to whether the doctors should have so informed the appellants, this goes to the merits of the underlying claims, and not fraudulent concealment.

333 Ark. at 82-83, 969 S.W.2d at 612-13.

In the present case, appellant Gerlinda Martin submitted an affidavit, as did appellants in the *Adams* cases, in which she identified a partial list of facts that were "never disclosed" to her by Arthur Gocio, the hospital, or anyone else prior to surgery. *See* 333 Ark. at 70, 969 S.W.2d at 606. She stated that she was unaware of these facts until 1996, and that had they been disclosed to her, she would not have allowed the surgery to be performed with the product Orthoblock. Her affidavit sets out the following interaction between herself and Dr. Gocio:

> In December 1991, Defendant Dr. Allan Gocio performed a surgical procedure on my neck. Prior to surgery I met with Dr. Gocio to discuss this procedure. Dr. Gocio told me I needed a fusion. He did not tell me he would use an Orthoblock. He never told me he used an Orthoblock.

The facts alleged in this case are similar to those in the case of Jan and Ken Mitchell, which was discussed by the *Adams* court as follows:

> Prior to the surgery, [Jan Mitchell] had a telephone conversation with [Dr.] Arthur to discuss the procedure. Arthur simply told her that she had a ruptured disc, and that she needed surgery. He did not tell her anything about the surgery or what he might use as a graft material. Her sister-in-law had previously had surgery performed by Arthur and in that surgery, he had used bone from the bone bank and Mitchell assumed that he would use bone from the bone bank in her surgery. She did not learn until after August 1993, when she became aware that other lawsuits had been filed and she then obtained her medical records, that Orthoblock had been used in her surgery.
>
> . . . it is noteworthy that . . . Mitchell assumed bone from the bone bank would be used in her surgery, but the doctors in

fact made no representations as to what material would be used. Thus, beyond the failure to inform, or a mere continuation of this nondisclosure, there must have been something more in order to create a fact question as to fraudulent concealment. *See Trantafello* [*v. Medical Ctr. of Taranza*, 227 Cal. Rptr. 84 (Cal. Dist. Ct. App. 1998)].

333 Ark. at 78, 969 S.W.2d at 611.

■ Appellants here, like Jan and Ken Mitchell, have alleged facts that amount to a failure to inform and a continuation of a prior nondisclosure, but they have not established an issue of fact on the question of fraudulent concealment. Therefore, under *Adams v. Arthur, supra,* we affirm the trial court's finding that fraud and fraudulent concealment did not toll the statute of limitations.

2. *Whether the statute of limitations had expired as to Calcitek, Inc.*

Appellants contend that the limitations period against appellee Calcitek, the manufacturer of Orthoblock, had not run on the products-liability claim and that appellants did not waive their complaint for breach of warranty by failing to give notice to appellee. The trial court's order granting Calcitek's motion to dismiss includes the following pertinent findings of fact and conclusions of law:

1. This is an action for the improper implantation of a product named "Orthoblocks" in a spinal fusion operation.

. . . .

5. The Arkansas statute of limitations applicable to products liability actions is "three years after the date on which the death, injury or damage complained of occurs." Ark. Code Ann. § 16-116-103.

6. Because Plaintiffs complain of alleged damage caused by the improper implantation of "Orthoblocks," any cause of action for personal injury began to accrue as of the date of surgery in December 1991.

7. Therefore, the filing of Plaintiffs' Complaint on September 17, 1996, was outside the applicable three year statute of limitations for products liability actions.

8.   The Court also finds that Plaintiffs' cause of action is not saved by the "discovery rule" as the Arkansas Supreme Court has declined to adopt such a rule in products liability cases.

9.   Even if Plaintiffs' cause of action for products liability could be tolled by the "discovery rule," Plaintiffs should have known of the alleged damage well before September 17, 1993.

10.   Accordingly, Plaintiffs' cause of action for products liability is barred by the applicable three year statute of limitations.

IT IS, THEREFORE, BY THE COURT CONSIDERED, ORDERED and ADJUDGED that the Motion to Dismiss filed on behalf of Calcitek be and the same is hereby granted.

■ ■   Our Product Liability Act of 1979, now codified at Arkansas Code Annotated section 16-116-103 (1991), provides that product-liability actions seeking damages for personal injury must be brought within three years from the date on which the death, injury, or damage complained of occurs. In *Spickes v. Medtronic, Inc.*, 275 Ark. 421, 631 S.W.2d 5 (1982), such a case regarding implantation of a faulty pacemaker, the supreme court held that the statute of limitations begins to run when the negligent damage occurs, not at the time the full extent of the injury is ascertained. 275 Ark. at 423, 631 S.W.2d at 6.  The discovery rule has been applied in Arkansas only in causes of action for medical malpractice claims involving foreign objects, and then only pursuant to statute.  That statute, Arkansas Code Annotated section 16-114-203(b) (Supp. 1997), reads in part as follows:

(a)   Except as otherwise provided in this section, all actions for medical injury shall be commenced within two (2) years after the cause of action accrues.

(b)   The date of the accrual of the cause of action shall be the date of the wrongful act complained of and no other time. However, where the action is based upon the discovery of a foreign object in the body of the injured person which is not discovered and could not reasonably have been discovered within such two-year period, the action may be commenced within one (1) year from the date of discovery or the date the foreign object reasonably should have been discovered, whichever is earlier.

In *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), the supreme court explained its refusal to adopt the "discovery rule":

> Since 1877, it has been our rule that the statute of limitations applicable to a malpractice action begins to run, in the absence of concealment of the wrong, when the negligence occurs, and not when it is discovered. *Riggs v. Thomas*, 283 Ark. 148, 671 S.W.2d 756 (1984). Appellant Chapman acknowledges our long line of cases so holding and that they constitute the "general rule." Even so, he asks us to abandon the general rule and retroactively adopt one of the "current trend" cases. Those cases primarily adopt one of three (3) approaches. First, is the "discovery rule." Under this approach, the statute of limitations does not begin to run until the negligent act is discovered or should have been discovered.

307 Ark. at 88, 817 S.W.2d at 425.

■ For the reasons set forth in *Spickes* and *Chapman*, we affirm the trial court's finding that the products-liability statute of limitations had run as to Calcitek. We need not address appellants' argument that they did not waive their complaint for breach of warranty by failure to give notice to appellee because we hold that the products-liability statute applies and because the trial court made no findings regarding notice as the basis of its ruling.

Affirmed.

MEADS, J., agrees.

ROAF, J., agrees on Point 2 and, for the reasons stated in *Johnson v. Arthur*, 65 Ark. App. 220, 986 S.W.2d 874 (1999), concurs on Point 1.