Timothy O. HAMPTON *v.* Donna TAYLOR

94-438                                887 S.W.2d 535

Supreme Court of Arkansas
Opinion delivered December 5, 1994

*J.G. Molleston*, for appellant.

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *William I. Prewett*, for appellee.

JACK HOLT, JR., Chief Justice. This is an appeal from a summary judgment in favor of the appellee, Donna Taylor. The appellant, Timothy O. Hampton, a former stockholder and officer of GCP, Inc., filed suit against Ms. Taylor, a secretary and bookkeeper for GCP, Inc., alleging that she had made fraudulent statements to certain account debtors whose accounts had been assigned as security for a promissory note to the First National Bank of Magnolia, Arkansas, upon which Mr. Hampton was personally liable as a guarantor. Mr. Hampton asserted that Ms. Taylor's alleged misrepresentations caused these account debtors to divert payments from the creditor bank to GCP, Inc., and further resulted in his having to pay the note when it went into default.

The Columbia County Circuit Court granted Ms. Taylor's motion for summary judgment on the basis that the three-year statute of limitations for actions based on misrepresentation, Ark. Code Ann. § 16-56-105 (1987), barred the claim. The circuit court found that Mr. Hampton had acknowledged that the alleged misrepresentation occurred on May 3, 1989, more than three years prior to the filing of the complaint on September 22, 1993.

On appeal, Mr. Hampton argues that the trial court erred in failing to find an issue of material fact with respect to his contentions (1) that Ms. Taylor fraudulently concealed the existence of Mr. Hampton's cause of action, and (2) that the three-year statute of limitations did not begin to run until the occurrence of the last element of the tort charged (pertaining to representations allegedly made to officers or employees of Thermal-Tec of Michigan, Inc.). Neither argument is persuasive. We affirm.

## Facts

Appellant Timothy Hampton is a former stockholder and officer of a corporation known as GCP, Inc. On November 23, 1988, he executed a line-of-credit agreement, personally guaranteeing a one-year promissory note owed by GCP, Inc., to the First National Bank of Magnolia, Arkansas. Subsequently, on November 28, 1988, and on March 24, 1989, GCP, Inc., by Mr. Hampton, assigned two debts owed it, respectively, by Thermal-Tec of Michigan, Inc., and Triple T Roofing, Inc., to First National Bank as security for payment of the note that Mr. Hampton had guaranteed. As a result, Mr. Hampton became the beneficiary of the assignments for the purpose of paying the indebtedness guaranteed to First National Bank.

Mr. Hampton sold his 100 shares in GCP, Inc., to the corporation on May 26, 1989. As ratified in a formal agreement between Mr. Hampton and GPC, Inc., the corporation agreed to pay him $9,487.85 in consideration for the stock transfer. The certificate representing the shares was delivered to First National Bank, which acted as escrow agent.

As an additional consideration, GCP, Inc., agreed to assume all of the indebtedness owed to First National Bank under the November 23, 1988 line-of-credit agreement, under which the corporation owed, as of May 19, 1989, the amount of $59,002.50. Further, the agreement recited that:

> the Corporation and the Guarantors [stockholders Edwin S. Hall, III, and Gerald E. Taylor, Sr. (no relation to the appellee)], jointly and severally, do hereby agree to hold Hampton harmless from any liability owed to the said First National Bank pursuant to said line of credit agreement and agree to indemnify him in connection therewith. The

Corporation and Guarantors will use their best efforts to have Hampton released from any personal liability for said indebtedness. The Corporation and Guarantors shall also pay to First National Bank any accounts of Hampton Industries which have been assigned to First National Bank pursuant to the aforementioned line of credit agreement and the Corporation and Guarantors do hereby agree to indemnify and hold Hampton harmless from any liability on said accounts receivable.

Provision was made for an installment-payment schedule, and Mr. Hampton agreed to transfer ownership of a tanker trailer to GCP, Inc.

On November 23, 1989, the promissory note guaranteed by Mr. Hampton came due. The note remained unpaid, and, on March 9, 1990, Mr. Hampton received a demand letter from First National Bank of Magnolia, requiring payment of the line-of-credit agreement. At that time, according to an affidavit he filed on April 15, 1993, in support of his response to Ms. Taylor's motion for summary judgment, Mr. Hampton inquired of all account debtors whose accounts had been assigned to First National Bank and discovered that Thermal-Tec of Michigan, Inc., and Triple T Roofing, Inc., had paid their accounts receivable directly to GCP, Inc., rather than to First National Bank. Upon further investigation, Mr. Hampton averred, he was advised by corporate officers of Thermal-Tec and Triple T that appellee Donna Taylor, who at the time was employed as a secretary and bookkeeper for GCP, Inc., had represented that the funds in question should be paid directly to GCP, Inc., instead of to First National Bank because the bank had been paid.

Mr. Hampton declared that, because the Thermal-Tec and Triple T accounts were paid to GCP, Inc., and not applied on the loan, which remained delinquent, he was required to satisfy the conditions of the promissory note and letter-of-credit agreement by paying the sum of $59,002.50 plus accrued interest to First National Bank of Magnolia within thirty days of receipt of the demand letter. Mr. Hampton further stated in his affidavit that, while it was possible that he had some notice that the promissory note and letter-of-credit agreement were in default on or about November 23, 1989, when the note came due, he did not recall

any such notice, and the bank's records reflected no such notice. He asserted that the earliest date on which he should have reasonably have known that the accounts had been diverted was November 23, 1989.

To recover his payment on the note, Mr. Hampton, doing business as Hampton Industries, filed a complaint against Ms. Taylor on September 22, 1992, alleging that, on or before November 23, 1989, Ms. Taylor knew or should have known that he was entitled to the benefit of the assigned Thermal-Tec and Triple T accounts and that First National Bank of Magnolia had not been paid the amounts owing pursuant to the assignments. He claimed, further, that Ms. Taylor knowingly misrepresented to officers and employees of Thermal-Tec and Triple T that the amounts owing under the assignments had been paid. Mr. Hampton asserted that, despite his due diligence, he became aware of Ms. Taylor's misrepresentations only on or after November 23, 1989, when, contrary to the agreement between him and GCP, Inc., he was required to pay the promissory note. He alleged that Ms. Taylor had procured the use and benefit of some of the amount represented by the assignments and stated that he was entitled to compensatory damages in the amount of $24,598.50 plus pre- and post-judgment interest and punitive damages.

On December 17, 1992, Ms. Taylor filed a motion for summary judgment, stating that the answers to interrogatories provided by Mr. Hampton indicated that the alleged misrepresentations occurred on April 24, 1989 (as to Thermal-Tec), and May 3, 1989 (as to Triple T). The answers stated that, in both instances, Ms. Taylor had used words to the effect that "The bank has been paid, send payment directly to us." Because, Ms. Taylor asserted, Ark. Code Ann. § 16-56-105 imposes a three-year statute of limitations for actions based on misrepresentation, the action, which was "clearly not supported by any factual basis," was barred.

In his brief in support of his response to the motion for summary judgment, filed, along with his supporting affidavit, on April 15, 1993, Mr. Hampton argued that his factual basis for his complaint was that Ms. Taylor had committed the acts alleged and that he had been damaged in consequence. He urged that the five-year statute of limitations provided for in Ark. Code Ann. § 16-56-111 (1987) should apply because the misrepresentation

was "inextricably linked" to the written agreement of May 26, 1989, between Mr. Hampton and GCP, Inc.

The Columbia County Circuit Court entered its order on December 28, 1993, finding, as noted earlier, that Mr. Hampton had acknowledged that Ms. Taylor's alleged misrepresentations were made on May 3, 1989, and that the suit was filed on September 22, 1993, more than three years later, outside the bounds of Ark. Code Ann. § 16-56-105, the statute of limitations for actions based on misrepresentation. Ms. Taylor's motion for summary judgment was granted, and Mr. Hampton's complaint was dismissed. From that judgment, this appeal arises.

### Standing

It should be noted at the outset that no argument has been advanced on the question of Mr. Hampton's standing to assert a claim for deceit when the misrepresentations by Ms. Taylor which allegedly harmed him were directed to third parties. We address the issues actually raised by Mr. Hampton and dealt with by the trial court in its findings — *i.e.*, fraudulent concealment and the statute of limitations. In so doing, however, we do not intend to convey an impression one way or the other regarding the appropriateness, absent the statute of limitations, of a misrepresentation claim of this nature.

### Issue of material fact — fraudulent concealment

For his first point for reversal, Mr. Hampton contends that the trial court erred in failing to find an issue of material fact with respect to Ms. Taylor's alleged fraudulent concealment of the existence of his cause of action. There is no merit in his argument.

Summary judgment is a remedy that should only be granted when there are no genuine issues of material fact to litigate and when the case can be decided as a matter of law. *Birchfield* v. *Nationwide Insurance*, 317 Ark. 38, 875 S.W.2d 502 (1994). The movant for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Wright* v. *Compton, Prewett, Thomas & Hickey, P.A.*, 315 Ark. 213, 866 S.W.2d 387 (1993). Once the moving party makes a prima facie showing of entitlement, however, the responding party must meet proof with proof in order to demonstrate that there is remaining a genuine issue of material fact. *Mount Olive*

*Water Ass'n* v. *City of Fayetteville*, 313 Ark. 606, 856 S.W.2d 864 (1993). The response and supporting material must set forth specific facts showing that there is a genuine issue for trial. *Id.*

On appeal, this court's review is limited to examining the evidentiary items presented and determining whether the trial court correctly ruled that those items left all material facts undisputed. *Hardie* v. *Estate of Davis*, 312 Ark. 189, 848 S.W.2d 417 (1993). We review the facts in the light most favorable to the appellant and resolve all doubts and inferences against the moving party. *Id.*

The tort of fraud, misrepresentation, or deceit consists of five elements which must be proved by a preponderance of the evidence: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Roach* v. *Concord Boat Corp.*, 317 Ark. 474, 880 S.W.2d 305 (1994); *Wheeler Motor Co.* v. *Roth*, 315 Ark. 318, 867 S.W.2d 446 (1993).

The applicable statute of limitations is the three-year period provided in Ark. Code Ann. § 16-56-105 (1987). The statutory limitation period begins to run, in the absence of concealment of the wrong, when the wrong occurs, not when it is discovered. *Wright* v. *Compton, Prewett, Thomas & Hickey, supra.* In the present case, it is undisputed that the dates on which Ms. Taylor's alleged misrepresentations were made were April 24, 1989, and May 3, 1989. The latter date is controlling for purposes of the running of the statute of limitations.

Mr. Hampton insists that the earliest date on which he could have been apprised of the misrepresentations was November 23, 1989, when the promissory note came due. He asserts that he made "significant inquiry" of Ms. Taylor and was "provided with false information during a time well within three years prior to filing the suit." This course of conduct, he maintains, amounted to a fraudulent act that tolled the statute of limitations. In support of his contention, he refers to the following passage from *Wilson* v. *General Electric Capital Auto Lease, Inc.*, 311 Ark. 84, 87, 841 S.W.2d 619, 620-1 (1992):

No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it.

*Quoting Scroggins Farms Corp.* v. *Howell,* 216 Ark. 569, 572-3, 226 S.W.2d 562, 565 (1950); and *McKneely* v. *Terry,* 61 Ark. 527, 545, 33 S.W. 953, 957 (1896). *See also First Pyramid Life Ins. Co.* v. *Stoltz,* 311 Ark. 313, 843 S.W.2d 842 (1992), where the same quotation appears.

The language from *Wilson* and *Stoltz,* however, in fact bolsters Ms. Taylor's position. There is no evidence of record that Ms. Taylor committed a "positive act of fraud." Instead, Mr. Hampton merely stated in his answers to interrogatories that Ms. Taylor was, as the secretary for GCP, Inc., familiar with the promissory note and assignments, yet told representatives of Thermal-Tec and Triple T that "The bank has been paid, send payment directly to us." This allegation reveals no furtive planning or secret execution of a fraudulent act to keep Mr. Hampton's cause of action concealed. Neither does the bare assertion in Mr. Hampton's affidavit that he had made "periodic inquiry of Ms. Taylor about the accounts receivable between May 26, 1989, and March 9, 1990, and was told that they were all in "good standing." From the corporate perspective, the accounts receivable were indeed in good standing. Mr. Hampton's statement in his affidavit that "Donna Taylor did not tell me that the accounts receivable assigned to the First National Bank had been paid directly to GCP, Inc., as a result of her misrepresentation" fails to establish a positive act of fraud.

Moreover, none of Mr. Hampton's assertions satisfies the five elements of misrepresentation. His unsupported allegations simply do not prove that Ms. Taylor made a false representation of a material fact; that she knew her representations were false or that she had insufficient information on which to base them; that she intended to induce action or inaction on Mr. Hampton's

part in reliance upon her representations; that Mr. Hampton justifiably relied upon the representations; or that he suffered damage as a result of the reliance. *See Roach* v. *Concord Boat Corp., supra.*

■ An affidavit stating only conclusions is not sufficient to show a genuine issue of material fact. *Mount Olive Water Ass'n* v. *City of Fayetteville, supra.* Hence, no proof was submitted to the circuit court that would suffice to toll the statute of limitations. The circuit court did not err in granting summary judgment.

*Statute of limitations — occurrence of last element of tort*

In his second point for reversal, Mr. Hampton argues that the circuit court erred in granting the motion for summary judgment because the three-year statute of limitations did not begin to run until the occurrence of the last element of the alleged tort. He urges that the relevant dates for accrual of the cause of action were, at the earliest, November 23, 1989, when the promissory note came due, and, at the latest, some point between March 9, 1990, when First National Bank made demand upon him, and April 8, 1990, when he finally paid off the note.

Mr. Hampton cites *Stroud* v. *Ryan*, 297 Ark. 472, 763 S.W.2d 76 (1989), for the principle that the statute of limitations is tolled during the time the putative plaintiff is prevented from bringing the action to which the statute of limitations applies. In that case, however, more than a year passed during which a default judgment had been set aside. For the duration of that period, this court held, "although the alleged negligent act had occurred, Stroud had no claim against Ryan, as he could have shown no injury." *Id.*, 297 Ark. at 474, 763 S.W.2d at 78. The *Stroud* case is inapplicable to the present set of circumstances. No legal mechanism prevented Mr. Hampton from filing suit.

Inapplicable, as well, is *Midwest Mutual Ins. Co.* v. *Arkansas Nat'l Co.*, 260 Ark. 352, 538 S.W.2d 574 (1976), another case cited by Mr. Hampton, where this court held that a taxicab company's cause of action against its insurance carrier accrued only after suit was filed against the taxicab company and it was obliged to assume the cost of its own defense after first learning that its carrier's agent had negligently failed to obtain adequate cover-

age. In the present case, Mr. Hampton was not subjected to an action in tort.

More to the point, as noted earlier, there is no evidence of record of affirmative acts of concealment on Ms. Taylor's part in relation to Mr. Hampton. *See First Pyramid Life Ins. Co.* v. *Stoltz, supra.* Absent active concealment, the statute of limitations is not tolled. Further, as an officer and shareholder who had knowledge of the assignments, Mr. Hampton could have discovered the effect of the alleged misrepresentations before May 26, 1989, the date on which he sold his shares in the corporation. *See Wilson* v. *General Electric Capital Auto Lease, Inc., supra.* The date of accrual was May 3, 1989, and the circuit court correctly applied the three-year period.

Affirmed.